IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ELIZA McCARTY, | : | |
| Plaintiff, | : | |
| v. | : | CA 2:12-00259-C |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,[1] | : | |
| Defendant. | : | |

## MEMORANDUM OPINION AND ORDER

The plaintiff brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her applications for supplemental security income ("SSI") and disability insurance benefits ("DIB").  The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (*See* Doc. 19 ("In accordance with provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, including . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").)  Upon consideration of the administrative record ("R.") (Doc. 13), the plaintiff's brief (Doc. 15), the Commissioner's brief (Doc. 16), and the arguments presented at the February 15, 2013 Hearing, it is determined that the Commissioner's decision denying the plaintiff benefits should be **REVERSED AND REMANDED** for further proceedings not inconsistent with this decision.[2]

---

[1]     Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Colvin is substituted for Michael J. Astrue as the proper defendant in this case.

[2]     Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals.  (*See* Doc. 19 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for

## Procedural Background

On September 4, 2008, the plaintiff filed applications for SSI and DIB (R. 114-118), alleging disability beginning June 11, 2008 (*see* R. 114). Her application was initially denied on November 20, 2008. (*See* R. 64-69.) A hearing was then conducted before an Administrative Law Judge on April 29, 2010 (*see* R. 25-62). On August 9, 2010, the ALJ issued a decision finding that the claimant was not disabled (R. 8-24), and the plaintiff sought review from the Appeals Council. The Appeals Council issued its decision declining to review the ALJ's determination on February 17, 2012 (*see* R. 1-6)—making the ALJ's determination the Commissioner's final decision for purposes of judicial review, *see* 20 C.F.R. § 404.981—and a complaint was filed in this Court on April 13, 2012 (*see* Doc. 1).

## Standard of Review and Claims on Appeal

In all Social Security cases, the plaintiff bears the burden of proving that he or she is unable to perform his or her previous work. *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the plaintiff has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the plaintiff's age, education, and work history. *Id.* Once the plaintiff meets this burden, it becomes the Commissioner's burden to prove that the plaintiff is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Although at the fourth step "the [plaintiff] bears the burden

---

this judicial circuit in the same manner as an appeal from any other judgment of this district court.").)

of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted).

The task for this Court is to determine whether the ALJ's decision to deny plaintiff benefits is supported by substantial evidence. Substantial evidence is defined as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "In determining whether substantial evidence exists, [a court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. App'x 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Bernhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence." *Id.* (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)).

On appeal to this Court, the plaintiff asserts two separate claims:

1. The ALJ erred in finding the plaintiff was capable of performing medium work, contrary to the evidence of record and the plaintiff's testimony; and

2. The ALJ erred in failing to consider side effects of medications.

(Doc. 13 at 1.)

## Discussion

Central to the plaintiff's first claim on appeal is the ALJ's finding that the plaintiff's uncontrolled diabetes is caused by her own noncompliance. (*See* Doc. 15 at

3-4; *see also* R. 16-17 (according to the ALJ, "[t]here is no doubt, based on the objective medical evidence, that the claimant has a problem controlling her diabetes; however, ***the biggest problem faced by the claimant is that she is consistently noncompliant with her medication, diet, and exercise***. . . . Within the record, there is no evidence to support that the claimant's diabetes would remain uncontrolled or limit her ability to work *if she were complaint with treatment*.") (emphasis added).) According to the Commissioner, however, any allegation that the ALJ failed to properly analyze the plaintiff's noncompliance is without merit because, she contends, "the ALJ properly considered [the plaintiff's] non-compliance for the purposes of the credibility assessment and in determining the weight given to Dr. Chu's opinion, but was not required to conduct further inquiry[,]" such as one pursuant to Social Security Ruling ("SSR") 82-59.³ (Doc. 16 at 11-12 (asserting that "an 82-59 analysis" was not required

---

³ SSR 82-59, 1982 WL 31384, at *1 (1982), requires that an ALJ

first decide whether a claimant would "otherwise be found to be under a disability . . . ." *Id.* Then, the ALJ must determine if the treatment prescribed by a treating source would restore the individual's ability to work. *Id.* Finally, the ALJ must analyze whether the failure to follow that prescribed treatment is justified. *Id.*

Additionally, SSR 82–59 describes the criteria necessary for a finding of failure to follow prescribed treatment. *Id.* An individual's inability to afford prescribed treatment that he is willing to accept is a justifiable cause for failure to follow prescribed treatment. *Id.* at *3–4. However, "[a]ll possible resources (e.g., clinics, charitable and public assistance agencies, etc.) must be explored. Contacts with such resources and the claimant's financial circumstances must be documented." *Id.* at *4. [And] "[t]he burden of producing evidence concerning unjustified non-compliance is on the [Commissioner]." *Dawkins*[ *v. Bowen*,] 848 F.2d [1211, 1214 n.8 (11th Cir. 1988)]. If the ALJ concludes that an individual does not have a good reason for failing to follow prescribed treatment, the ALJ must inform the individual of this fact before a determination is made. 1982 WL 31384, at *4. The individual must also be afforded "an opportunity to undergo the prescribed treatment, or to show justifiable cause for failing to do so." *Id.*

4

because "[t]he ALJ did not find that Plaintiff's impairment precluded engaging in SGA").)

As to the Commissioner's second point—SSR 82-59 does not apply because the ALJ did not first find the plaintiff disabled—"SSR 82–59 *normally applies* to a claimant's eligibility for benefits *after a finding of disability* has been made." *Grubb v.*

---

*Pelham v. Astrue*, Civil Action No. 5:11–CV–01354–KOB, 2012 WL 4479287, at *2 (N.D. Ala. Sept. 21, 2012) (in which the Court reversed and remanded after determining that "the ALJ's reasoning for his finding that the claimant is not disabled is ambiguous"—"this court cannot determine whether the ALJ considered the claimant disabled, but noncompliant with medication (and, thus, *not* disabled); disabled, but dependent on medication (and, thus, actually disabled); or simply not disabled[,]" *id.* at *8 (emphasis in original)).

As the capsule summary of SSR 82-59 in *Pelham* demonstrates, SSR 82-59 provides procedural safeguards to claimants in the event an ALJ seeks to invoke their noncompliance as a basis for denying benefits; these safeguards are concomitant with the ALJ's duty to develop a full and fair record. *See, e.g., Funderburk v. Astrue*, Civil Action No. 2:10cv852–CSC, 2012 WL 904682, at *8 (M.D. Ala. Mar. 15, 2012) ("[A]s the basis for improperly overlooking Funderburk's inability to afford medical care, the ALJ stated that there are community and church services available to indigent people who are in need of medical care. However, the ALJ did not develop the record as to whether such resources existed and were available to Funderburk. . . . Because the record simply was not developed with regard to the availability of free or low-cost medical treatment, the ALJ's conjecture that there are community and church services available is not supported by the record.") (internal quotation marks omitted) (citing, *inter alia*, SSR 82-59; *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) ("[B]ecause a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record.")).

In *Pelham*, after the court determined that the ALJ's reasoning was ambiguous, it also noted that the ALJ "neglected to follow several procedural requirements mandated by SSR 82–59."

> The ALJ indicated in his opinion that if the claimant was compliant with his medications, he should be able to maintain work. However, during the hearing the claimant testified that he could not afford his medications. SSR 82–59 requires an ALJ to appropriately develop the record to resolve whether the claimant is justified in failing to follow the prescribed treatment.

*Id.* at *8; *see also id.* at *9 (noting that reversal was required both by the ALJ's failure "to clearly indicate whether the claimant was *not* disabled, or *was* disabled and required medication" *and* the ALJ's failure "to adhere to the procedural requirements of SSR 82–59 to fully develop the record and provide sufficient notice and opportunity to the claimant to prove justifiable cause for failing to follow treatment") (emphasis in original).

*Apfel*, No. 98 CIV. 9032(RPP), 2003 WL 23009266, at *5 (S.D.N.Y. Dec. 22, 2003) (emphasis added).

> Essentially, disability is found at step four, then non-compliance is used to deny at step five.  As other courts have noted, ***however***, "the regulatory scheme promulgated by the [Commissioner] does not expressly dictate how the noncompliance inquiry under 20 C.F.R. § 404.1530 [or § 404.930] meshes with the [five-step] sequential analysis of disability under 20 C.F.R. § 404.1520 [or § 416.920]."

*Id.* (emphasis added) (in *Grubb*, "the ALJ did not make it explicitly clear whether she determined claimant was able to work at step four or at step five[, and a]fter several readings of the ALJ's opinion, the court conclude[d] that the ALJ [there, <u>like the ALJ here</u>,] considered the issue of noncompliance ***as part of her process of finding plaintiff was not disabled*** and not in determining that plaintiff's claims of disability were not credible[,]" *id.* at *6 (original emphasis omitted; emphasis added)) (quoting *Preston v. Heckler*, 769 F.2d 988, 990 (4th Cir. 1985)) (footnote omitted).

The court in *Grubb* began by noting other—"analogous"—cases in which courts reviewed decisions where "an ALJ did not expressly deny claimant benefits on the grounds that she failed to follow prescribed treatment," and "the reviewing courts [ ] inferred from the ALJ's reasoning that the ALJ based a finding of disability on the lack of compliance."  *Id.* at *6 (citing, *inter alia*, *Ibarra v. Commissioner of Soc. Sec. Admin.*, 92 F. Supp. 2d 1084, 1087-88 (D. Or. 2000) ("The ALJ did not expressly purport to deny claimant benefits on the ground that she failed to follow prescribed treatment, but his comments . . . and his ultimate finding that claimant is not disabled rest, in significant part, on his expressed perception that her failure to follow a prescribed treatment caused her condition to be worse than it might otherwise be.  Consequently, SSR 82–59, which sets forth the Commissioner's required criteria for a finding of failure to

follow prescribed treatment when evaluating disability, appears to govern this case.") (citations omitted); *Sharp v. Bowen*, 705 F. Supp. 1111, 1123-25 (W.D. Pa. 1989) ("[T]he ALJ, when analyzing the medical evidence in his opinion, repeatedly emphasized the plaintiff's noncompliance with his medical regimen. . . . Although the ALJ did not make an express finding that the plaintiff should be denied benefits because of his noncompliance with prescribed medical treatment, it is clear that the ALJ's decision to deny benefits was colored by his express finding that the plaintiff repeatedly refused prescribed medical treatment.")).

The *Grubb* Court then, most importantly, extensively relied on *Dawkins v. Bowen*, 848 F.2d 1211 (11th Cir. 1988). *See* 2003 WL 23009266, at *6-7. In *Dawkins*, where, "[i]n denying appellant SSI disability benefits, the ALJ relied ***primarily if not exclusively*** on evidence in the record and testimony at the hearing concerning appellant's noncompliance with prescribed medical treatment[,]" *id.* at 1212 (emphasis added), the Eleventh Circuit, after holding that "poverty excuses noncompliance[,]" *id.* at 1213, observed that, in the administrative decision,

> the ALJ explicitly noted appellant's noncompliance, but did not consider her poverty as a good excuse. The problem with this case is that it is unclear from the ALJ's opinion whether or not he based his determination that appellant was not entitled to benefits on appellant's failure to follow prescribed medical treatment. Although the ALJ found that appellant's testimony was "inconsistent with the findings of her attending physicians," the only inconsistency identified by the ALJ involved noncompliance with prescribed treatment.

*Id.* at 1213-14; *see also id.* at 1214 (quoting the ALJ's decision, in which he stated, "In the instant case, the medical evidence supports a conclusion that the claimant's diabetes mellitus and high blood pressure are amenable to adequate control . . . as prescribed by

her treating physician. . . . [Her] noncompliance is clearly demonstrated in the progress notes of her treating physician, as discussed in the evaluation of the medical records.").

The Eleventh Circuit thus found that "the ALJ's conclusion that the appellant retain[ed] the residual capacity to return to work [was] inextricably tied to the finding of noncompliance," *id.*, and ultimately reversed the district court's affirmance of the Commissioner and, in remanding the case, instructed that the ALJ determine

> whether appellant is disabled, without reference to her failure to follow prescribed medical treatment. If the ALJ determines that appellant is disabled, the ALJ must then determine whether or not appellant is in fact unable to afford the medicine and other treatment her doctors have prescribed. If the ALJ finds that appellant is disabled and cannot afford the prescribed treatment, then she is excused from not complying and she is entitled to benefits.

*Id.* (footnotes omitted).

The Eleventh Circuit distinguished *Dawkins* in *Ellison v. Barnhardt*, 355 F.3d 1272 (11th Cir. 2003), finding the ALJ's determination there, "unlike in *Dawkins*, . . . ***was not significantly based on a finding of noncompliance***," *id.* at 1275 (emphasis added)—

> Although the ALJ, in discrediting Ellison's allegations of disability, noted that the medical record "supports non-compliance on [Ellison's] part," a review of the ALJ's decision reveals that his finding on this issue was ***based primarily on*** the facts that (1) Ellison worked for several years in spite of his impairments, and (2) Ellison's use of alcohol aggravated his seizure condition.

*Id.* (emphasis added); *compare id.*, *with Beegle v. Social Sec. Admin., Comm'r*, 482 Fed. App'x 483, 487 (11th Cir. July 23, 2012) (per curiam) ("While the ALJ must consider evidence showing that the claimant is unable to afford medical care before denying disability insurance benefits based upon the claimant's non-compliance with such care[,] . . . reversible error does not appear where the ALJ ***primarily based her decision on factors other than non-compliance***, and where the claimant's ***non-compliance was***

8

*not a significant basis* for the ALJ's denial of disability insurance benefits.") (citing *Ellison*, 355 F.3d at 1275-76) *and Brown v. Commissioner of Soc. Sec.*, 425 Fed. App'x 813, 817 (11th Cir. Apr. 27, 2011) (per curiam) ("[I]f the claimant's failure to follow medical treatment is not one of the *principal factors* in the ALJ's decision, then the ALJ's failure to consider the claimant's ability to pay will not constitute reversible error.") (citing *Ellison*, 355 F.3d at 1275) (emphases added); *see also Jones v. Astrue*, No. 4:11–CV–03473–LSC, 2012 WL 5379142, at *6-7 (N.D. Ala. Oct. 29, 2012).[4]

Here, the ALJ's decision fails to discuss either the plaintiff's ability to afford medication or whether any such "poverty excuses [her] noncompliance." *Dawkins*, 848 F.2d at 1213. And while the ALJ did not explicitly follow SSR 82-59 to first find the plaintiff disabled and then use the plaintiff's noncompliance to deny her benefits, here, the plaintiff's noncompliance was not only "one of the principal factors" in—it was the "significant basis" for—the ALJ's decision to find that she retained the residual capacity

---

[4] There, the court rejected the plaintiff's argument, based on *Dawkins*, that she "could not afford treatment for her mental condition[,]" because the record demonstrate[d] that [she] consistently sought treatment for her physical complaints" and reflected that she "was treated with medication for her mental impairments, and that no doctor ever recommended that [she] seek more aggressive modes of treatment or therapy, which demonstrates that medication controlled her symptoms." *Id.* at *6. The court, relying on *Ellison* and *Brown*, also noted that, "[e]ven if there was outstanding evidence of [her] failure to follow medical treatment" and, thus, "a need for an explanation of such,

> the Eleventh Circuit has held that if the claimant's failure to follow medical treatment is not one of the *principal factors* in the ALJ's decision, then the ALJ's failure to consider the claimant's ability to pay will not constitute reversible error. Here, the ALJ cited several factors for discrediting Plaintiff's complaints, including the weakness of the existing medical evidence, her ability to care for twin infants, her sporadic work history, and the fact that no treating or examining source opined that Plaintiff had any limitations greater than the ALJ found or that she was disabled, while one physician . . . even released her to work without any restrictions . . . . As such, the ALJ's omission of a discussion of Plaintiff's ability to afford mental health treatment was at most harmless error, and substantial evidence supported the ALJ's decision.

*Id.* (internal citations and quotation marks omitted and emphasis added).

to perform less than the full range of medium work.[5]  *Contra Ellison*, 355 F.3d at 1275; *Brown*, 425 Fed. App'x at 817; *Beegle*, 482 Fed. App'x at 487.[6]  Accordingly, it was error for the ALJ to rely so extensively on the plaintiff's noncompliance without first affording her the safeguards of SSR 82-59.  *Cf. Baker v. Astrue*, Civil Action No. 1:11cv35–CSC, 2012 WL 353738, at *4 (M.D. Ala. Feb. 2, 2012) ("It is clear from the record that, at no time, did the Commissioner or ALJ explain to the plaintiff the effect of her failure to follow prescribed treatment or give the plaintiff the opportunity to show justifiable cause for her failure to follow treatment.  The ALJ did not inquire into the availability of free or subsidized sources of treatment.  She did not ask about the

---

[5]  In his discussion of the medical evidence, the ALJ's findings include the following: (1) "*[T]hroughout the record, noncompliance was noted* including being out of medication and not seeking refills and leaving from appointments before prescriptions could be given" (R. 15); (2) "The most recent visit *continued to reflect noncompliance with medication*, and it is noted that her physical examination was normal in all areas" (*id.*); (3) "[I]t was *continuously noted* that [the plaintiff] had *not taken her insulin*" (*id.*); (4) "[B]ut *again, noncompliance was noted* and she was admitted for therapeutic intervention" (*id.*); (5) "It was also noted that she refused to take her insulin" (*id.*); (6) "On one occasion, the claimant was admitted for diabetic ketoacidosis, but *longtime noncompliance was once more noted*" (*id.*); (7) "In addition, the record reflects two other visits for uncontrolled diabetes and diabetic ketoacidosis, however the notes indicated *noncompliance* with medications" (*id.*); (8) "Dr. Kidd's impression was diabetes, poor control.  He noted that he believed the claimant could work if her blood sugar were under control and he did not find anything on her physical examination" (R. 16); (9) "There is no doubt, based on the objective medical evidence, that the claimant has a problem controlling her diabetes; however, *the biggest problem faced by the claimant is that she is consistently noncompliant with her medication, diet, and exercise*" (R. 16-17); and (10) "Within the record, there is *no evidence to support that the claimant's diabetes would remain uncontrolled or limit her ability to work if she were complaint with treatment*" (R. 17) (emphases added).

[6]  Further, as courts in other Circuits have held, SSR 82-59 should be followed where, for example, (1) an ALJ's findings "rest, in significant part, on the [ALJ's] expressed perception that [a plaintiff's] failure to follow prescribed treatment caused her condition to be worse than it might be otherwise be[,]" *Ibarra*, 92 F. Supp. 2d at 1087-88; *compare id.*, *with* R. 17 ("[w]ithin the record, there is no evidence to support that the claimant's diabetes would remain uncontrolled or limit her ability to work if she were complaint with treatment"), or (2) an "ALJ repeatedly emphasize[s] the plaintiff's noncompliance with his medical regimen" and "it is clear that the ALJ's decision to deny benefits was colored by his express finding that the plaintiff repeatedly refused prescribed medical treatment[,] *Sharp*, 705 F. Supp. at 1123-25; *compare id.*, *with* R. 15-17.

plaintiff's efforts to secure such treatment and she did not delve into Baker's financial condition. The ALJ simply assumes that these resources are available. Moreover, she also assumes that these resources could provide the medical treatment required by the plaintiff. While failure to seek treatment is a legitimate basis to discredit the testimony of a claimant, it is the law in this circuit that poverty excuses noncompliance with prescribed medical treatment or the failure to seek treatment.") (citing *Dawkins*); *accord Qualls v. Astrue*, Civil Action No. 1:10cv651–CSC, 2012 WL 135589, at *8-9 (M.D. Ala. Jan. 17, 2012).

Next, the record reflects the plaintiff was without insurance coverage for a period of time; this should have prompted the ALJ to inquire into her ability to afford medication. *See Dawkins*, 848 F.2d at 1214 n.8 (citation omitted) ("The burden of producing evidence concerning unjustified noncompliance is on the [Commissioner]."). It appears likely that she may not have had insurance from as soon as June 11, 2008, when she became unemployed (*see* R. 13), until early 2010, when, according to her testimony, she began receiving Medicaid (*see* R. 39). In *Anderson v. Astrue*, No. 8:11–cv–234–T–24MAP, 2012 WL 570951, (M.D. Fla. Feb. 3, 2012), *report & recommendation adopted*, 2012 WL 570055 (M.D. Fla. Feb 22, 2012), for example, the record was "replete with evidence that Plaintiff was without medical insurance for period of time[,]" *id.* at *3, but the colloquy between the ALJ and the plaintiff regarding insurance coverage was brief, *see id.* at *4.[7] And the court held that although "the ALJ set[] forth multiple

---

[7] There, "[t]he colloquy between the ALJ and the Plaintiff at the administrative hearing was as follows:

  Q: You don't have health insurance, right?

  A: No, I do not.

11

grounds for his decision [to deny benefits] in theory, in actuality, the ALJ's opinion relied primarily on Plaintiff's noncompliance, a finding that [was] not supported by substantial evidence." *Id.; see also id.* ("The ALJ did not ask any additional questions pertaining to why Plaintiff did not have insurance or if she failed to comply with prescribed medical treatment because she could not afford treatment. Plaintiff's record indicates sporadic compliance and the ALJ should have more fully inquired into the cause of Plaintiff's noncompliance.") (citing *Cowart*, 662 F.2d at 735); *accord Gazard v. Commisoner of Soc. Sec.*, No. 6:07–cv–1535–Orl–18DAB, 2009 WL 51315, at *7 (M.D. Fla. Jan. 7, 2009).

Finally, the Court must address one of the reasons the ALJ provided for giving less than controlling weight to the opinion of the plaintiff's treating physician, Dr. Chu. In his decision, the ALJ first observes that "Dr. Chu is an examining physician with a significant treatment history, and his opinion is fairly consistent with the record as a

---

    Q:   That's why you've just been going to Johnny Ruth (phonetic)?

    A:   Ruth, yes.

    Q:   An[d] you go to Bayfront and they—

    A:   Yes.

    Q:   —help you—

    A:   Yes.

    Q:   —when you're having serious problems.

    A:   Yeah."

*Id.* at *4; *compare id.*, *with* R. 39 ("Q: How do you pay for your visit to Dr. Chu? A: Medicaid. Q: Medicaid? A: Yes, sir. Q: How long have you been on Medicaid? A: I just got back on I think the beginning of this year. Q: Has it been a little better since you have some coverage? A: My migraines? No, sir. Q: What about your diabetes? A: They still ain't under control. Q: Do you feel like you are getting the adequate care and treatment from Dr. Chu? A: Not really, I try changing my doctor, but Medicaid won't let me.").

whole." (R. 17.) The ALJ then states, "However, it is noted that Dr. Chu's opinion reflects the claimant's noncompliance, and, therefore, his opinion is not given greater weight." (*Id.*) Dr. Chu's opinion contains a handwritten annotation that "Pt has uncontrolled Diabe[tes] to a certain extent by noncompl[iance]" (R. 578), but, contrary to the ALJ's opinion, there is absolutely no indication in the record *how* Dr. Chu factored the plaintiff's noncompliance into his opinion regarding the plaintiff's ability to function in the workplace with her combination of impairments. Because the Court does not understand the ALJ's reasoning for discounting the opinion of a treating source based on an unexplained and amorphous annotation, the Court cannot say that the ALJ's decision as to the weight to give Dr. Chu's opinion is supported by substantial evidence.

A medical source's *failure to consider* a plaintiff's noncompliance, where that source is aware of that noncompliance, however, may serve as a basis to discount that source's opinion. In *Patterson v. Astrue*, No. 08–22065–CIV, 2011 WL 837744, at *4 (S.D. Fla. Feb. 10, 2011), *report & recommendation adopted*, 2011 WL 836731 (S.D. Fla. Mar. 3, 2011), for example, the court affirmed an ALJ's decision to discredit a physician's opinion because the physician "failed to take [the plaintiff's] noncompliance into consideration when making her assessments." *Id.* at *4. There, the ALJ provided, "despite being aware that the claimant was non-complaint, [the physician] failed to take into consideration these circumstances and instead based her comments mostly on the claimant's self reports, without any further testing." *Id.* In contrast, here, Dr. Chu expressly noted that noncompliance was "to a certain extent" a factor, but the Court, unlike the ALJ, will not speculate as to how Dr. Chu took the plaintiff's noncompliance into consideration when making his assessments.

## Conclusion

Accordingly, it is **ORDERED** that the decision of the Commissioner of Social Security denying the plaintiff benefits be **REVERSED AND REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *see Shalala v. Schaefer*, 509 U.S. 292 (1993), and terminates this Court's jurisdiction over this matter.

**DONE and ORDERED** this the 28th day of March, 2013.

                                          s/WILLIAM E. CASSADY
                                        **UNITED STATES MAGISTRATE JUDGE**